UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
HAROLD KLEIMAN, Individually and On : Civil Action No. 1:09-cv-08634-AKH
Behalf of All Others Similarly Situated, :
: <u>CLASS ACTION</u>
Plaintiff, :
: AMENDED CLASS ACTION COMPLAINT
vs. : FOR VIOLATIONS OF FEDERAL
: SECURITIES LAWS
RHI ENTERTAINMENT, INC., et al., :
:
Defendants. :
:
---------------------------------------------------------------x

Lead Plaintiff United Food & Commercial Workers Union Local 655 ("Lead Plaintiff" or "Plaintiff") makes the following allegations, except as to allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel (which investigation included the retention of an industry consultant, analysis of publicly available news articles and reports, public filings, securities analysts' reports and advisories about RHI Entertainment, Inc. ("RHI" or the "Company") and interviews with former employees of RHI, press releases and other public statements issued by the Company, and media reports about the Company and believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.  This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased the common stock of RHI pursuant and/or traceable to the Company's initial public offering (the "IPO" or the "Offering") on or about June 19, 2008 seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act [15 U.S.C. §§77k, 77l(a)(2) and 77o].

3.  This Court has jurisdiction of this action pursuant to Section 22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §§1331 and 1337.

4.  Venue is properly laid in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District and the IPO was marketed in this District.

5.  In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the

mails and telephonic communications and the facilities of the NASDAQ National Market ("NASDAQ").

## PARTIES

6. Lead Plaintiff purchased RHI common stock, as set forth in the certification previously filed in this action and incorporated herein by reference, pursuant and/or traceable to the Company's IPO, and was damaged thereby.

7. Defendant RHI develops, produces, and distributes new made-for-television movies, mini-series, and other television programming worldwide. The Company also produces new episodic series programming for television. RHI also owns a library of existing long-form television content, which the Company licenses primarily to broadcast and cable networks worldwide. RHI's stock trades on NASDAQ under the ticker symbol RHIE.

8. Defendant Robert A. Halmi, Jr. ("Halmi") was, at all relevant times, Chief Executive Officer, President and Chairman of the Board of RHI. Halmi signed the Registration Statement.

9. Defendant William J. Aliber ("Aliber") was, at all relevant times, Chief Financial Officer. Aliber signed the Registration Statement.

10. Defendants Halmi and Aliber are collectively referred to herein as the "Individual Defendants."

11. By reason of their management positions and their ability to make public statements in the name of RHI, the Individual Defendants were and are controlling persons, and had the power and influence to cause (and did cause) RHI to engage in the conduct complained of herein.

## CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of itself and all persons other than Defendants who purchased the common stock of RHI pursuant and/or traceable to the IPO. Excluded from the Class

Defendants herein, members of the immediate family of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

13. The members of the Class are so numerous that joinder of all members is impracticable. RHI sold more than 13.5 million shares of common stock in the IPO. The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of RHI or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

14. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

15. Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff's and all the class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

16. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that

will be encountered in the management of this litigation that would preclude its maintenance as a class action.

17.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether the prospectus and registration statement issued by Defendants to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts about RHI and its business; and

(c)    the extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

18.    Defendant RHI develops, produces, and distributes new made-for-television ("MFT") movies, mini-series, and other television programming worldwide. The Company also produces new episodic series programming for television. The Company was formed in January 2006, when Defendant Halmi, Kelso & Company, L.P. ("Kelso") and other investors purchased Hallmark Entertainment from Hallmark Cards and renamed it RHI Entertainment.

19.    Following the formation of the Company, RHI transitioned from producing content solely for Hallmark Cards and diversified the type of content it was developing, producing and distributing. In this regard, the Company expanded the networks that it licensed and distributed its content to.

20.    On or about June 13, 2008, RHI filed with the Securities and Exchange Commission ("SEC") a Form S-1/A Registration Statement (the "Registration Statement"), for the IPO.

- 4 -

21.     On June 19, 2008, the Prospectus (the "Prospectus"), which formed part of the Registration Statement, became effective and, including the exercise of the over-allotment, more than 13.5 million shares of RHI's common stock were sold to the public, thereby raising more than $189 million.

22.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

23.     By the time of the IPO, there was a significant decline in demand for MFT and mini-series. The onslaught of new digital media platforms over the past few years has resulted in increasingly less advertising dollars being spent on television advertising, resulting in the reduction of licensing fees to production companies specializing in film products for television broadcasts, such as RHI. The new digital media platforms have allowed advertisers to diversify into targeted Internet marketing, advertising on cellular phones and other communication device media applications, and video games. Consequently, and particularly following the advent of digital video recorder ("DVR") and TiVo technology in 2000, which allows television audiences to fast forward through commercials, advertising revenue for television has been in significant decline. The Registration Statement, however, failed to meaningfully disclose this negative trend. Instead, the Registration Statement portrayed the Company's production model as low risk.

24.     The Registration Statement described RHI's production business and highlighted that programming is ordered by RHI's customers late in the preceding year or early in the current year and delivered by RHI in the second half of the year. The Registration Statement, stated in pertinent part, as follows:

> Our revenue and operating results are seasonal in nature. A significant portion of the films that we develop, produce and distribute are delivered to the broadcast and cable networks in the second half of each year. **Typically, programming for a particular year is ordered either late in the preceding year or in the early portion of the current year. Generally, planning and production take place during the spring and summer and completed film projects are delivered in the third and fourth quarters of each year.** As a result, our first and second quarters typically have less revenue than the other quarters of a given year. Importantly, the results of one quarter are not necessarily indicative of results for the next or any future quarter.[1]

25. The Registration Statement also described RHI's business model, in which the Company obtained financing for the majority of its production costs in advance of production through initial licensing fees and foreign license agreements, stating, in pertinent part, as follows:

> Our business is comprised of new film production and the licensing of existing content from our film library. In our production process, **we reduce risk through an economic model that generates contractual sales for the majority of our production costs in advance of delivering our content (pre-sales). It is our practice not to commence production until we have a firm order for an initial license fee that typically equals 30% to 60% of our production costs**. The initial licensee is generally a U.S. broadcast or cable network that pays the fee to acquire the right to air our content for a defined period of time. **We are also able to license the same programming to international broadcast and cable networks. It is our practice not to begin production unless a significant number of these foreign license agreements are secured or under negotiation**.

26. The Company further positively described its production model as a strength, stating, in pertinent part, as follows:

Company strengths

Proven production model - Our business model enables us to generate contractual sales for our new productions in advance of their delivery and provides visibility into long-term cash flows from the licensing of rights to content in our film library. **Key production model elements include:**

- commencing production when we have a firm order for an initial license fee;

---

[1] All emphasis is added unless otherwise noted.

- collecting a significant portion of this contracted cash during production and the remaining contracted cash before the expiration of the initial licensing period; and

- contracting with additional customers to pre-sell rights which account for a majority of our production costs prior to delivery of our content.

27. The Registration Statement positively described the Company's ability to keep production expenses low, allowing the Company to develop, produce and distribute approximately 40 MFT films and mini-series in 2008, stating, in pertinent part, as follows:

> **In addition to pre-selling licensing rights, we mitigate production risk by focusing on relatively low cost programming, with production expenses ranging from $2.0 to $4.0 million for a MFT movie and $8.0 to $20.0 million for a mini-series.** In addition, we have a relatively short production cycle, between 30 and 60 days for a MFT movie and 60 and 90 days for a mini-series, and relatively low annual working capital requirements. **These factors will enable us to develop, produce and distribute approximately 40 MFT movies and mini-series in 2008. We believe that these characteristics, combined with our expanding distribution opportunities, will continue to create long-term value for us while limiting our risk.**

28. The Registration Statement further positively described the demand for the Company's products, stating, in pertinent part, as follows:

> During 2008, we expect to develop, produce and distribute approximately 40 MFT movies and mini-series. Historically, we have been able to scale our production volume and diversify our content offering in order to meet market demand. **We believe our award winning content offers customers a variety of cost-effective programming that drives ratings and, in turn, generates additional demand for our library content.** In nine of the last 13 seasons, we have developed and distributed either the highest-rated U.S. broadcast MFT movie or mini-series episode. In addition, our productions have won 104 Emmy® Awards, 15 Golden Globe Awards and eight Peabody Awards.

29. The statements referenced above in ¶¶24-28 were materially misleading when made because Defendants failed to disclose or indicate the following adverse facts:

(a) that at the time of the filing of the Registration Statement, RHI did not have firm orders for 40 MFT films and mini-series despite its representations concerning its ordering and production schedule set forth above;

(b) that a widespread, long term trend away from MFT films and mini-series, as well as decreasing advertising revenues, were resulting in significantly decreased demand for RHI's MFT films and mini-series and lower domestic and foreign licensing fees;

(c) that as a consequence of the foregoing, the Company's stated production model was flawed and there was a substantial risk that RHI would be unable to obtain sufficient licensing fees to cover a majority of RHI's production costs in advance of delivering content and would thus be unable to complete production of ordered MFT films and mini-series; and

(d) that RHI's ability to produce ordered MFT films and mini-series was further dependent upon its ability to finance deficit production costs.

30. Under applicable SEC rules and regulations governing the preparation of the Registration Statement, the Registration Statement was required to disclose the fact that demand for RHI's MFT films and mini-series and domestic and foreign licensing fees had declined, and that consequently, the Company's production model was flawed and the anticipated production of 40 MFT films and mini-series was at risk. The Registration Statement failed to contain any such disclosures. Specifically:

(a) under Item 303(a)(3)(ii) of Regulation S-K, an issuer is required to, among other things, "describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." At the time of the IPO, it was known that demand for RHI's MFT films and mini-series and domestic and foreign licensing fees had declined. Therefore, RHI's production model was flawed and there was a substantial risk that RHI would be unable to obtain sufficient licensing fees to cover a majority of RHI's production costs in advance of delivering content and would thus be unable to complete production of ordered MFT films and mini-series, and

RHI's ability to produce ordered MFT films and mini-series was further dependent upon its ability to finance deficit production costs. This financing uncertainty was then having and would continue to have an unfavorable impact on the Company's revenues and income from continuing operations, and therefore, was required to be disclosed in the Prospectus, but was not; and

(b) the Registration Statement was required to furnish the information required by Item 503 of Regulation S-K. Under Item 503(c) of Regulation S-K, an issuer is required to, among other things, provide a "discussion of the most significant factors that make the offering speculative or risky." The material fact that the Company's production model was flawed for the reasons stated herein was a significant factor that made the IPO "speculative or risky." Indeed the Company lacked the ability to finance its production costs and fulfill existing orders for MFT films and mini-series, and, accordingly, the revenue from the anticipated production of 40 MFT films and mini-series was uncertain and at risk. Thus, this information was required to be disclosed in the Prospectus, but was not.

31. On August 7, 2008, RHI issued a press release announcing its financial results for the second quarter of 2008. Defendant Halmi commented on the announcement, stating, in pertinent part, as follows:

> This was a solid quarter and first half of the year for RHI Entertainment, highlighted by significant growth in library revenues, impressive improvement in Adjusted EBITDA and the continued strength of our unique production model. . . With our diverse slate of films, a robust library offering and the completion of our public offering, we are well situated to access new and exciting distribution partners, and to capitalize on the strong demand we are seeing for our content from both domestic and international distributors.

According to the press release, the Company "anticipates delivery of 35 to 40 MFT movies and miniseries, the majority of which will not be delivered until the third and fourth quarters of 2008."

32. On November 6, 2008, RHI issued a press release announcing its financial results for the third quarter of 2008 and stating that as a result of "current economic conditions," the Company

- 9 -

was further revising its anticipated film production schedule for 2008 downward to between 30 and 35 films, or 11% to 25% less than the original schedule announced in the Registration Statement. Defendant Halmi commented on the results, stating, in pertinent part, as follows:

> **Current economic conditions have presented challenges for all companies, RHI included. As a result, the number of productions we will deliver in 2008 will be reduced to between 30 and 35 films. We are closely monitoring factors such as reduced television advertising spending in the fourth quarter of 2008 and the first half of 2009 and the potential impact that this could have on the demand for, and pricing of, our film content and the distribution of our programming.** At the same time, we are closely managing our operations and carefully reviewing costs to ensure we have the appropriate resources and sufficient liquidity to bring about long-term growth.

33. In response to this announcement, the price of RHI common stock dropped from $13.91 per share to $7.95 per share on November 10, 2008, on heavy trading volume.

34. On March 5, 2009, RHI issued a press release announcing its financial results for the fourth quarter and full year ended December 31, 2008. For the full year, the Company reported a net loss of $58.4 million as compared to a loss of $22.6 million in 2007.

35. In response to the announcement, the price of RHI common stock dropped from $2.26 per share to $1.40 per share.

36. Since this time RHI has continued to report disappointing results and RHI stock presently trades for $0.30 per share.

## COUNT I

### Violations of Section 11 of the Securities Act
### Against All Defendants

37. Plaintiff repeats and realleges each and every allegation contained above.

38. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

39. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

40. RHI is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement and the Prospectus.

41. As issuer of the shares, RHI is strictly liable to Plaintiff and the Class for the misstatements and omissions.

42. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

43. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

44. Plaintiff acquired RHI shares pursuant to the Registration Statement.

45. Plaintiff and the Class have sustained damages. The value of RHI common stock has declined substantially subsequent to and due to Defendants' violations.

46. At the times it purchased RHI shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to February 16, 2006. Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

## COUNT II

### Violations of Section 15 of the Securities Act
### Against the Individual Defendants

47. Plaintiff repeats and realleges each and every allegation contained above.

48. This Count is brought pursuant to Section 15 of the Securities Act against the Individual Defendants.

49. Each of the Individual Defendants was a control person of RHI by virtue of his position as a director and/or senior officer of RHI. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of RHI.

50. Each of the Individual Defendants was a culpable participant in the violation of Section 11 of the Securities Act alleged in Count I above, based on their having signed the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and the Class, prays for judgment as follows:

A. declaring this action to be a plaintiff class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B. awarding Plaintiff and other members of the Class damages together with interest thereon;

C. awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

      D.      awarding Plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: March 18, 2010

        COUGHLIN STOIA GELLER
          RUDMAN & ROBBINS LLP
        SAMUEL H. RUDMAN
        DAVID A. ROSENFELD

        _/s/ Samuel H. Rudman_
        SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

*Lead Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, Samuel H. Rudman, hereby certify that on March 18, 2010, I caused a true and correct copy of the attached:

Amended Class Action Complaint for Violations of Federal Securities Laws

to be: (i) filed by hand with the Clerk of the Court; and (ii) served by first-class mail to the following counsel for defendants:

> James E. Brandt
> Jeff G. Hammel
> Latham & Watkins LLP
> 885 Third Avenue, Suite 1000
> New York, NY  10022.

Samuel H. Rudman