## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAROLD KLEIMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>   vs.<br><br>RHI ENTERTAINMENT, INC., ROBERT A. HALMI, JR., and WILLIAM J. ALIBER,<br><br>                   Defendants. | Civil Action No. 1:09-cv-08634 (AKH) |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

James E. Brandt
Jeff G. Hammel
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York  10022
(212) 906-1200

Attorneys for Defendants

August 2, 2010

<u>**Table of Contents**</u>

                                                                                                    **Page**

Preliminary Statement ............................................................................................................... 1

Argument ..................................................................................................................................... 3

I.      THE AMENDED COMPLAINT DOES NOT PLEAD A SECTION 11 CLAIM ............ 3

      A.      The Projection of "Approximately 40" Movies Was Accurate .............................. 3

              1.      Plaintiffs' Misreading of the Registration Statement Does Not Establish That It Contained A False Statement ........................................ 4

              2.      Plaintiffs Have Pled No Facts Establishing That The Opinion That "Approximately 40" Movies Would Be Made Was Objectively and Subjectively False ..................................................................................... 6

              3.      Analyst Reports Post-Dating the Registration Statement Cannot Show A Misrepresentation In the Registration Statement ......................... 7

      B.      The Registration Statement Did Not Misrepresent That RHI Had "40 Firm Orders" for Movies ................................................................................... 8

              1.      Plaintiffs' Misreading of The Registration Statement Does Not Establish A Claim ..................................................................................... 9

              2.      The "Bespeaks Caution Doctrine" Bars Plaintiffs' Claim ........................ 10

      C.      The Registration Statement Did Not Misrepresent The Impact of Technological Changes on Demand for RHI's Movies ...................................... 12

II.     THE AMENDED COMPLAINT DOES NOT STATE A SECTION 15 CLAIM ........... 15

III.    DISMISSAL SHOULD BE WITHOUT LEAVE TO AMEND ...................................... 15

Conclusion ................................................................................................................................. 16

## Table of Authorities

**Page(s)**

### CASES

*Briarwood Invs. Inc. v. Care Inv. Trust Inc.*,........................................................................11
    07 Civ. 8159 (LLS), 2009 U.S. Dist. LEXIS 18963 (S.D.N.Y. Mar 4, 2009)

*Citiline Holdings, Inc. v. iStar Fin. Inc.*,
    No. 08 Civ. 3612 (RJS), 2010 U.S. Dist. LEXIS 29706 (S.D.N.Y Mar 26, 2010) ..........14

*DeMaria v. Andersen*,
    318 F. 3d 170 (2d Cir. 2003) .........................................................................................9

*Fait v. Regions Fin. Corp.*,
    --- F. Supp. 2d ---, 2010 WL 1883487 (S.D.N.Y. May 10, 2010)...................................6

*Faulkner v. Verizon Comms., Inc.*,
    156 F. Supp. 2d 398 (S.D.N.Y. 2001) .............................................................................6

*Ganino v. Citizens Utils. Co.*,...........................................................................................8
    228 F.3d 154 (2d Cir. 2000)

*Garber v. Legg Mason, Inc.*,
    347 Fed. Appx. 665 (2d Cir. 2009) ..........................................................................13, 14

*Halperin v. EBanker USA.com, Inc.*,
    295 F.3d 352 (2d Cir. 2002) ........................................................................................10

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*,
    936 F.2d 759 (2d Cir. 1991) .........................................................................................11

*In re AOL Time Warner, Inc. Secs. & ERISA Litig.*,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004) .............................................................................6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    308 F. Supp. 2d 249 (S.D.N.Y. 2004) .....................................................................passim

*In re Flag Telecom Holdings. Ltd. Sec. Litig.*,
    618 F. Supp. 2d 311 (S.D.N.Y. 2009) .....................................................................11, 14

*In re Fuwei Films Sec. Litig.*,
    634 F. Supp. 2d 419 (S.D.N.Y. 2009) ...........................................................................14

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) .............................................................................3

*In re Int'l. Bus. Machs. Corp. Sec. Litig.*,
    163 F.3d 102 (2d Cir. 1998) ................................................................6

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005) ....................................................3, 7, 8

*In re Merrill Lynch Research Reports Sec. Litig.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003) ..........................................................16

*In re Prestige Brands Holding, Inc.*,
    No. 05 CV 06924 (CLB), 2006 U.S. Dist. LEXIS 46667 ................................14

*In re Rockefeller Ctr. Props. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) ....................................................................14

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001) ......................................................................14

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993) ..........................................................................6

*In re WorldCom, Inc. Sec. Litig.*,
    308 F. Supp. 2d 214 (S.D.N.Y. 2004) ..........................................................15

*In re WorldCom, Inc. Sec. Litig.*,
    303 F. Supp. 2d 385 (S.D.N.Y. 2004) ..........................................................16

*Landmen Partners Inc. v. Blackstone Group, L.P.*,
    659 F. Supp. 2d 532 (S.D.N.Y. 2009) ..........................................................13

*Landmen Partners, Inc v. Globalstar, Inc.*,
    No. 07 Civ. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sep. 30, 2008) ............7

*Lasker v. New York State Elec. & Gas Corp.*,
    85 F.3d 55 (2d Cir. 1996) ..........................................................................9

*Lin v. Interactive Brokers Group, Inc.*,
    574 F. Supp. 2d 408 (S.D.N.Y. 2008) ..........................................................15

*Matthews v. Kidder, Peabody & Co., Inc.*,
    260 F.3d 239 (3d Cir. 2001) ....................................................................11

*Ning Yu v. State St. Corp.*,
    686 F. Supp. 2d 369 (S.D.N.Y. 2010) ..........................................................13

*Olkey v. Hyperion 1999 Term Trust*,
    98 F.3d 2 (2d Cir. 1996) ..........................................................................10

*P. Stolz Family P'ship L.P. v. Daum,*
    355 F.3d 92 (2d Cir. 2004) ........................................................................................10

*Pollio v. MF Global, Ltd.,*
    608 F. Supp. 2d 564 (S.D.N.Y. 2009) .......................................................................14

*Rapoport v. Asia Elecs. Holding Co.,*
    88 F. Supp. 2d 179 (S.D.N.Y. 2000) ...........................................................................9

*Sedighim v. Donaldson, Lufkin & Jenrette, Inc.,*
    167 F. Supp. 2d 639 (S.D.N.Y. 2001) ........................................................................5

*Steinberg v.  PRT Group, Inc.,* ....................................................................................5
    88 F. Supp. 2d 294 (S.D.N.Y. 2000)

*Va. Bankshares, Inc. v. Sandberg,*
    501 U.S. 1083 (1991) ..................................................................................................6

Defendants submit this reply memorandum of law in further support of their motion to dismiss the Amended Class Action Complaint.[1]

### Preliminary Statement

Defendants' opening brief demonstrates that plaintiffs' legal theory—that the prediction in RHI's June 2008 registration statement that it "expect[ed]" to make "approximately 40" movies in 2008 was false because RHI eventually made 35 movies that year—states no claim. The Amended Complaint does not establish that this statement was inaccurate (35 is well within a projection of "approximately 40"), nor does it plead facts establishing, as it must, that defendants had information in June 2008 showing that the prediction was wrong at that time.

Plaintiffs' opposition brief serves mainly to underscore these flaws. Unable to point to any facts in the Amended Complaint demonstrating that RHI's prediction was wrong when it was made, plaintiffs resort to exaggerating the certainty with which the registration statement expressed that prediction while ignoring its clear cautionary language. Plaintiffs assert that RHI's prediction was somehow an "adamant" and "unequivocal assurance" that created the impression that making 40 movies in 2008 was a "virtual certainty" and "a given." (Pl. Br. at 1, 11-12, 15.) The registration statement says no such thing. Plaintiffs also argue that the "seasonal nature" of RHI's business described in the registration statement (in which movie orders "typically" were placed around the beginning of a year) shows that RHI must have known in June 2008 that it would not make "approximately 40" movies at year end and misled investors into believing that RHI had 40 "firm orders" as of June 2008. These arguments cannot be

---

[1]     Citations to defendants' opening brief are in the form "Def. Br. at _." Citations to the exhibits to the declaration of Jeff G. Hammel are in the form "Def. Ex. _." Citations to plaintiffs' opposition brief are in the form "Pl. Br. at _." Citations to the exhibits to the declaration of David A. Rosenfeld are in the form "Pl. Ex. _."

reconciled with the ordinary meaning of the word "typically," which is neither a guarantee nor a limitation on the timing of the placement of movie orders, nor can they be squared with the other cautionary language in the registration statement.  Opinions and predictions, such as RHI's "expect[ation]" that it would "produce and distribute approximately 40" movies in 2008, are only actionable under Second Circuit law if plaintiffs plead facts showing that they were both subjectively and objectively false when made (*i.e.,* that the prediction could not come true and the speaker did not believe it).  The Amended Complaint simply contains no such facts.

Having pled no facts supporting a claim in the Amended Complaint, plaintiffs turn to several analyst reports, none of which were pled and all of which significantly post-date the registration statement.  These reports do not state (or even suggest) that RHI's prediction that it would "produce and distribute approximately 40" movies was wrong in June 2008—the only legally relevant time for purposes of assessing plaintiffs' claim.  On the contrary, the analyst reports explain that as of November 2008 television networks—buyers of RHI's movies— "[we]re asking for deliveries to be pushed out into 2009."  (Pl. Ex. F, at 3.)  This later change in circumstance caused by others cannot, of course, show that RHI's earlier prediction was wrong.

That the best plaintiffs can do is to try to show that one portion of the registration statement (the "approximately 40" movies prediction) is false merely by pointing to another portion of the same registration statement (the "seasonality" disclosure) and relying on *post hoc* analyst reports—and misreading all of them—underscores that they have no facts whatsoever to support a claim.  The Amended Complaint should be dismissed without leave to amend.

2

<u>**Argument**</u>

**I.     THE AMENDED COMPLAINT DOES NOT PLEAD A SECTION 11 CLAIM**

Plaintiffs attempt to lower the standard by which their Amended Complaint will be assessed on this motion by asserting that, to state a Section 11 claim, a "short and plain statement will suffice."  (Pl. Br. at 10 (citing *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 342 (S.D.N.Y. 2003).)  However, the case law they rely upon pre-dates the Supreme Court's *Twombly* and *Iqbal* decisions, which require that all complaints contain facts that "state a claim that is plausible on its face."  (Def. Br. at 6-7.)  Nor do plaintiffs dispute the case law in this District is that, "[i]n order to state a claim pursuant to Section 11, a plaintiff must allege facts demonstrating that the defendant possessed the omitted information at the time the registration statement became effective."  (Def. Br. at 7 (quoting *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005).)  Plaintiffs do not meet that standard here.

**A.     The Projection of "Approximately 40" Movies Was Accurate**

It is black-letter law that "[t]he truth of a statement made in the [registration statement] is adjudged by the facts as they existed when the registration statement became effective."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 254 (S.D.N.Y. 2004) ("*Flag I*"); Def Br. at 7 (citing cases).  In an effort to show that RHI's statement that it "expect[ed] . . . approximately 40" movies would be made and delivered in 2008 was false, the only contemporaneous allegation plaintiffs can point to is the disclosure in the same registration statement that RHI's production cycle is "seasonal in nature."  (Pl. Br. at 4, 11-12.)  Because RHI "typically" receives most movie orders "late in the preceding year or early in the current year," plaintiffs hypothesize that RHI must have been aware in June 2008 that it did not have orders for "approximately 40" movies.  This, according to plaintiffs, renders false RHI's so-

3

called "adamant" and "unequivocal assurance" that "delivering approximately 40 films during 2008 was a virtual certainty" and "a given."  (*Id*. at 11, 12, 15.)  This theory cannot withstand even a cursory review.

> **1.     Plaintiffs' Misreading of the Registration Statement Does Not Establish That It Contained A False Statement**

The challenged statement in RHI's registration statement is this:  RHI "expect[s] to develop, produce and distribute approximately 40 MFT movies and miniseries" in 2008."  (Def. Ex. A, at 2.)  This is hardly an "unequivocal" or "adamant" assurance that it would do so— much less that it was a "virtual certainty" or "a given."  Plaintiffs put words into defendants' mouths.  And what the registration statement actually says about RHI's seasonality is this:

> *Typically*, programming for a particular year is ordered either late in the preceding year or in the early portion of the current year. *Generally*, planning and production take place during the spring and summer and completed film projects are delivered in the third and fourth quarters of each year.

(Pl. Ex. B, at 52 (emphasis added).)  That programming orders are "typically" taken early in a year, and that production "generally" takes place in the spring and summer, does nothing to show that the projection of "approximately 40" movies in June 2008 was false.  The registration statement does not state that RHI *always* received orders for the movies it will make in a given year before June of that year; it says that "typically" happens—meaning that there are regular instances in which it does not.  Plaintiffs' misreading of the registration statement supports no claim.  *See, e.g.*, *Flag I*, 308 F. Supp. 2d at 255 (dismissing Section 11 claim where plaintiffs' exaggerated the company's disclosures:  "Far from brashly 'touting' its 'state of the art technology' as plaintiff claims, Flag was singling out its 'state of the art technology' as a significant risk factor.").

Plaintiffs simply provide no facts establishing that defendants *possessed* the allegedly omitted information (that RHI would not make "approximately 40" movies) in June 2008 but did not disclose it.  Courts routinely dismiss Section 11 claims in the absence of such facts.  (Def. Br. at 7-8 (listing cases).)  Plaintiffs attempt to overcome this case law by asserting that they, unlike plaintiffs in those cases, have alleged a reason (the "seasonality" of movie orders) why defendants knew that RHI would not make "approximately 40" movies.  (Pl. Br. at 12 n.6.)  That effort is unavailing, however, not only because (as explained above) their theory is at odds with what the registration statement actually discloses, but also because plaintiffs in the relevant cases attempted to plead facts showing defendants possessed the allegedly omitted information at the time of the registration statement, but courts found those facts insufficient and dismissed the claims.  *See, e.g.*, *Flag I*, 308 F. Supp. 2d at 255-56 (dismissing Section 11 claim based on allegation that "a glut of supply," including "'pre-sales in excess of $750 million' on [Flag's] FA-1 system," was "overwhelming demand and driving down prices" as of the effective date of the registration statement); *Sedighim v. Donaldson, Lufkin & Jenrette, Inc.*, 167 F. Supp. 2d 639, 644-45, 649-50 (S.D.N.Y. 2001) (dismissing Section 11 claim alleging failure to disclose potential acquisition where acquirer had contacted target prior to offering because "[p]laintiffs d[id] not allege any facts" suggesting that the acquisition was "more likely than other strategic alternatives considered by the company" at the time of the offering); *Steinberg v. PRT Group, Inc.*, 88 F. Supp. 2d 294, 311 (S.D.N.Y. 2000) (dismissing Section 11 claim alleging omission of company's known failure to obtain "Y2K" business from existing clients where company stated that it "expect[ed] [to] increase revenues for Year 2000 solutions.").  The same result is appropriate here.

**2.**     **Plaintiffs Have Pled No Facts Establishing That The Opinion That "Approximately 40" Movies Would Be Made Was Objectively and Subjectively False**

Plaintiffs' argument that "due to the seasonal nature of RHI's business, defendants did have *reason to know* at the time of the IPO that RHI might not be able to meet its production forecast," further undermines their purported claim.  (Pl. Br. at 12 n.6 (emphasis added).)  It is settled law in the Second Circuit that

> mere opinions and predictions of future performance are not actionable under the securities laws unless they are worded as guarantees or are supported by specific statements of fact, or if the speaker does not genuinely or reasonably believe them.

*Faulkner v. Verizon Comms., Inc*., 156 F. Supp. 2d 384, 398 (S.D.N.Y. 2001) (quoting *In re Int'l. Bus. Machs. Corp. Sec. Litig*., 163 F.3d 102, 107 (2d Cir. 1998)).  Accordingly, to show that an opinion was known to be false (such as the opinion that RHI "expect[ed]" to make "approximately 40" movies in 2008), a plaintiff must plead facts establishing that "the opinion is both (1) not believed by the speaker and (2) objectively untrue."  *In re AOL Time Warner, Inc. Secs. & ERISA Litig*., 381 F. Supp. 2d 192, 243 (S.D.N.Y. 2004) (citing *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1092-96) (1991)).  Plaintiffs here do neither.

As noted above, there are no facts pled showing that the prediction of "approximately 40" movies was objectively false (could not come true) when it was made.  And there are certainly no facts showing that defendants subjectively did not believe that prediction at the time.  This argument thus supports no claim.  *See In re Time Warner Inc. Secs. Litig*., 9 F.3d 259, 266 (2d Cir. 1993) (affirming dismissal where "the complaint contains no allegations to support the inference that the defendants either did not have these favorable opinions on future prospects when they made the statements or that the favorable opinions were without a basis in fact"); *Fait v. Regions Fin. Corp.*, --- F. Supp. 2d ---, 2010 WL 1883487, at *5 (S.D.N.Y. May

6

10, 2010) (dismissing Section 11 claim where complaint was "devoid of any allegation that the defendants did not truly hold those opinions at the time they were made public").

### 3.   Analyst Reports Post-Dating the Registration Statement Cannot Show A Misrepresentation In the Registration Statement

Plaintiffs attempt to salvage a claim by citing analyst reports (which were not pled in the Amended Complaint) to show the market reaction in November 2008 when RHI disclosed that it would make "30-35" movies, and then argue that this proves that the prediction of "approximately 40" movies was false.  (Pl. Br. at 13-14.)  These reports, which long post-date the registration statement, provide plaintiffs no support at all.

As an initial matter, because these reports were issued in November 2008—five months after the June 2008 registration statement—they are irrelevant as a matter of law to determining what information defendants allegedly possessed but failed to disclose in June 2008. *See In re JP Morgan*, 363 F. Supp. 2d at 635 ("[A] plaintiff must allege facts demonstrating that the defendant possessed the omitted information at the time the registration statement became effective."); *Landmen Partners, Inc v. Globalstar, Inc*., No. 07 Civ. 0976 (LAP), 2008 WL 4449280 at *14-15 (S.D.N.Y. Sep. 30, 2008) (dismissing Section 11 claim where internal reports and other documents pled in complaint did not prove statements were false at the time they were made); *Flag I*, 308 F. Supp. 2d at 255-56 (dismissing Section 11 claim where plaintiff did not establish defendant possessed omitted information at time of registration statement).[2]

In any event, the reports actually support defendants.  *None* of them suggests that RHI's earlier prediction of "approximately 40" movies was "false" at the time it was made in

---

[2]     Plaintiffs also cite analyst reports to show that RHI was "highly leveraged," which supposedly proves that "every film RHI made was critical" to servicing it debt.  (Pl. Br. at 4-5.) This is a non sequitur.  All it shows is that RHI's debt situation was fully disclosed (which is how the analysts could write about it) and that a portion of RHI's business is making movies.

June 2008.  In fact, the analyst reports offer a far more plausible (and entirely benign) explanation for RHI's revised estimate of "30-35 movies" in November 2008:  that television "[n]etworks are asking for deliveries to be pushed out into 2009 or in cases where production has not yet begun for a postponement" of their order.  (Pl. Ex. F, at 3.)  Such changed circumstances after the registration statement was issued, and outside of RHI's control, cannot as a matter of law establish a Section 11 claim.  *See In re JP Morgan*, 363 F. Supp. 2d at 635; *Flag I*, 308 F. Supp. 2d at 255-56.[3]

**B.**    **The Registration Statement Did Not Misrepresent That RHI Had "40 Firm Orders" for Movies**

Backing away from their primary theory attacking RHI's projection that it "expect[ed]" that "approximately 40" would be made in 2008, plaintiffs attempt to demonstrate that RHI's registration statement created the misleading impression that RHI had "40 firm orders" for films.  (Pl. Br. at 11.)  Plaintiffs cobble together this theory by again relying on the disclosure in RHI's registration statement of the "seasonal" nature of its business and by pointing to the disclosure regarding RHI's "production model" that its "practice [i]s not to commence production until [it has] a firm order for an initial license fee" and by asserting that RHI characterized its production model as "practically risk free."  (*Id*. at 1, 11.)  According to plaintiffs, these statements misled investors into believing that RHI had 40 "firm orders" in June 2008 while failing to disclose that it did not.  (*Id*. at 11.)  This theory also lacks merit.

---

[3]     Notably, plaintiffs do not acknowledge that when RHI first revised its prediction on August 7, 2008, disclosing that it would make "35-40" movies, RHI's share price *rose*.  (*See* RHI Historical Stock Price, available at Yahoo Finance:  http://finance.yahoo.com/q/hp?s=RHIE.PK &a=07&b=7&c=2008&d=07 &e=7&f=2008&g=d.)  A "court may take judicial notice of well-publicized stock prices."  *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 n.8 (2d Cir. 2000).  When this announcement was made, the analyst that plaintiffs cite explained that "we are not fussed by the timing issue [of RHI's movie production] and we have seen these timing issues in other production companies," noting that such timing issues are often due to "broadcaster timing requests, *beyond the company's [RHI's] control*."  (Pl. Def. Ex. E, at 4 (emphasis added).)

### 1.    Plaintiffs' Misreading of The Registration Statement Does Not Establish A Claim

Here again, plaintiffs' exaggerated reading of the registration statement cannot be squared with what the registration statement actually says.  The registration statement does *not* say that RHI had 40 firm orders or that RHI's production model was "practically risk free." Those are plaintiffs' words—not words that appear in the registration statement.  On the contrary, as explained in defendants' opening brief, the registration statement expressly cautions:

- "Investing in [RHI's] stock involves *a high degree of risk*" (Def. Ex. A, cover page (emphasis added));

- "*We may not be able to sustain our production model* of generating contractual sales and collecting a significant portion of our production costs in advance of delivery of our content to an initial licensee" (*Id.* at 19 (emphasis added)); and

- "*We may begin production for a MFT or miniseries without an initial licensee's firm order*, or we may rely on an alternative means of revenue to recoup our production costs." (*Id.* (emphasis added).)

There is only one way to read these disclosures:  that RHI's business is risky, that it may not adhere to its production model and that it may begin making movies without firm orders from customers.  Plaintiffs seek to turn this plain reading on its head.

Plaintiffs cannot state a claim by reading into a disclosure words that do not appear in it, ignoring other words that do appear in it, or by imputing to such words meanings that they will not bear.  *See DeMaria v. Andersen*, 318 F. 3d 170, 180-81 (2d Cir. 2003) (affirming dismissal where alleged omission was "demonstrably untrue" upon review of challenged disclosure); *Lasker v. New York State Elec. & Gas Corp.*, 85 F.3d 55, 58-59 (2d Cir. 1996) (affirming dismissal where statement that company would not "compromise its financial integrity" did not cause investors to believe that its diversification activities would never adversely impact the company's finances); *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d

179, 184-87 (S.D.N.Y. 2000) (dismissing claim where SEC filings "contradict[ed] [p]laintiff's allegations"). Unsurprisingly, the Second Circuit has squarely held that this sort of pleading tactic will state no claim: there is "no serious rationale as to why a reasonable investor who was reading the prospectuses would consider the warnings too generic to be taken seriously and, at the same time, would find the sections discussing the opportunities and protections enticingly specific." *Olkey v. Hyperion 1999 Term Trust*, 98 F.3d 2, 8 (2d Cir. 1996). That tactic should also be rejected here.

### 2. The "Bespeaks Caution Doctrine" Bars Plaintiffs' Claim

Plaintiffs' claim is also barred by the "bespeaks caution" doctrine. *See P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004) ("A defendant may not be liable . . . for misrepresentations in a prospectus if the alleged misrepresentations were sufficiently balanced by cautionary language within the same prospectus such that no reasonable investor would be misled about the nature and risk of the offered security."). The "key question" in determining whether to grant a motion to dismiss based on truthful and cautionary disclosures accompanying an alleged misstatement or omission "is whether plaintiffs have overcome the existence of such [cautionary] language." *Halperin v. EBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002). Plaintiffs have not done so here. The cautionary language quoted above makes abundantly clear that while RHI "typically" receives orders early in a year, by definition it does not always do so—indeed, RHI expressly cautioned that it may depart from that typical model and begin movie production "without [a] . . . firm order." Here again, no investor could have been misled by these disclosures, and this theory cannot support a claim. (Def. Br. at 11 (listing cases).)

10

Plaintiffs' only response, in a footnote, is to assert that RHI only cautioned that it might not adhere to its typical production model "going forward." (Pl. Br. at 13 n.9.) Once again, plaintiffs' position is at odds with the ordinary meaning of words. RHI did not disclose that it adhered to its production model without exception; to the contrary, its use of the words "typically" and "generally" make clear that some variation is inherent to its practices. Nor can plaintiffs avoid the dispositive impact of RHI's cautionary disclosures by asserting they were "buried" in the registration statement. (Pl. Br. at 13.) The cautionary language is contained in a separate, boldfaced "Risk Factors" section under a heading that plainly warns investors "RHI may not be able to sustain [its] production model . . . ." (Def. Ex. A, at 11.) The Second Circuit has found that comparable disclosures "unambiguously communicate[d] the importance of reading all relevant material," *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 763 (2d Cir. 1991), and, in any case, investors in an IPO are presumed to have read the contents of the applicable registration statement. *See Matthews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 252 (3d Cir. 2001). Plaintiffs' citation (Pl. Br. at 13) to *Briarwood Invs. Inc. v. Care Inv. Trust Inc.*, 07 Civ. 8159 (LLS), 2009 U.S. Dist. LEXIS 18963 (S.D.N.Y. Mar 4, 2009), does not support a different result, as that case involved cautionary language far less precise than that used by RHI. *Id.* at *9 (rejecting generalized statement that "[t]here is no assurance, however, that we will be able to close these facilities on terms favorable to us, if at all.").[4]

---

[4]      Plaintiffs' reliance on *In re Flag Telecom Holdings. Ltd. Sec. Litig.*, 618 F. Supp. 2d 311 (S.D.N.Y. 2009) ("*Flag II*"), for the proposition that "scattered disclosures" did not adequately warn investors, is misplaced. (Pl. Br. at 13.) That case involved "amendments, annexes, and exhibits" to an SEC filing, not a clearly identified "Risk Factors" section within the registration statement. Plaintiffs' position would up-end settled case law and market practice concerning risk disclosures, as virtually all public company periodic reports include "Risk Factor" sections.

11

Plaintiffs' contention that RHI did not disclose that it did not have 40 "firm orders" supports no claim.

### C.   The Registration Statement Did Not Misrepresent The Impact of Technological Changes on Demand for RHI's Movies

Plaintiffs also contend that the registration statement "violated Section 11 by failing to disclose that th[e] widespread, long-term trend away from MFT movies and mini-series, caused by decreasing television advertising revenues, had led to lower demand and reduced licensing fees for RHI's MFT films and mini-series by the time of the IPO."  (Pl. Br at 17.)  Like plaintiffs' other arguments, this one relies on misreading or ignoring disclosures in the registration statement and distorting the plain meanings of words.

As demonstrated in defendants' opening brief, RHI's registration statement contains extensive disclosures regarding the impact of changing technologies on television content providers.  Its cautions include, for example:

- "The advancement of video technologies may cause advertisers to shift their expenditure to media in which their commercial messages are not circumvented by technology, leading to a reduction in television advertising and a reduction in demand for our programming"  (Def. Ex. A, at 20);

- "Since the introduction of video technology such as Digital Video Recording, or DVR, television audiences now have the ability to circumvent commercials while they view television programming, which could negatively impact advertising demand for the advertisers for our content, and could therefore adversely affect our revenue"  (*Id.*); and

- "If we cannot successfully exploit these and other emerging technologies, it could have a material adverse effect on our business, results of operations and financial condition.  This technology has impacted Nielson ratings, which advertisers use to determine the rates for advertising time which they purchase from television networks.  Lower Nielson ratings may result in a decrease in the amount of advertising revenue received by the networks and the networks may not have sufficient cash flow to license programming at current rates."  (*Id.*)

12

Plaintiffs do not dispute that no reasonable investor could read these cautionary disclosures and conclude that there was no risk to RHI from changing technologies.  (Def. Br. at 9-13 (citing cases).)  Instead, they argue that RHI's use of the words "may" and "could" render these disclosures inadequate because the risk "had already transpired" and materially impacted RHI.  (Pl. Br. at 18.)  This argument lacks merit.

The Amended Complaint alleges *no facts* establishing that these technological changes materially affected RHI or the past demand for its products.  Nor does it contain any facts showing that RHI was not "extremely well-positioned" to exploit new distribution channels for video content.  (Pl. Ex. B, at 81.)  Plaintiffs' reliance on general market factors, without establishing their supposed impact on RHI, will not state a claim.  *See Landmen Partners Inc. v. Blackstone Group, L.P.*, 659 F. Supp. 2d 532, 545 (S.D.N.Y. 2009) (dismissing Section 11 claim where "[p]laintiff does not allege that Blackstone [failed to disclose] any trends that would materially affect *its* real estate investments and generalized allegations that problems brewing in the market at large  . . . are insufficient to 'nudge [the] claims across the line from conceivable to plausible'") (emphasis in original)); *Ning Yu v. State St. Corp.*, 686 F. Supp. 2d 369, 380 (S.D.N.Y. 2010) (dismissing Section 11 claim where plaintiffs failed to "allege some facts to close the loop between the market turmoil and the accuracy of the Fund's valuations").

Plaintiffs cannot find the facts that their Amended Complaint lacks in the media articles cited in RHI's opening brief.  (Pl. Br. at 18.)  Those articles do not show that RHI was negatively impacted by these technologies or that the disclosures of their risk from such technologies was inaccurately described.  Rather, they underscore the obvious—that these technologies were no secret to any investor.  (Def. Br. at 12-13.)  Plaintiffs' quibbling (Pl. Br. at 19) over how widely this information was known does not help them state a claim.  *See Garber*

13

*v. Legg Mason, Inc.,* 347 Fed. Appx. 665, 669 (2d Cir. 2009) (courts may on motions to dismiss take judicial notice of "the fact of press coverage . . . to show that information . . . was publicly available . . . not for the truth of the matters asserted therein").[5]

That plaintiffs do not like the use of the words "may" or "could" in RHI's risk disclosures is similarly irrelevant.  The terms accurately described the potential for a negative impact on RHI in the future, but without assuming that will necessarily be the case.  "[I]ssuers of securities are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage."  *Pollio v. MF Global, Ltd*., 608 F. Supp. 2d 564, 571 (S.D.N.Y. 2009) (citations omitted).[6]

Lastly, plaintiffs' brief presents a new (and unpled) twist:  that defendants misleadingly painted a picture of *increasing* demand by disclosing that "content companies such as ours are expected to benefit" from growing demand for television programming.  (Pl. Br. at

---

[5]    *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419 (S.D.N.Y. 2009), does not support plaintiffs' argument that the market was unaware of the impact of technology on television content.  (Pl. Br. at 19.)  In that case, "the publication of three newspaper articles *in Chinese* [did] not transform the information contained within the articles into 'matters of general public knowledge.'"  *Id.* at 438 (emphasis added).  Similarly, *Citiline Holdings, Inc. v. iStar Fin. Inc.*, No. 08 Civ. 3612 (RJS), 2010 U.S. Dist. LEXIS 29706 (S.D.N.Y Mar 26, 2010), is also inapposite as it involved "isolated data points." *Id*. at 17.

[6]    Plaintiffs' effort to distinguish *Landmen* and *Garber* misses the mark.  (Pl. Br. at 20 n.13.)  Like the plaintiffs in *Landmen*, plaintiffs here do not allege a single *fact* linking the problems in the television industry generally to a decline in demand for RHI's products.  The cases plaintiffs rely upon— *Flag II, In re Prestige Brands Holding, Inc.,* No. 05 CV 06924 (CLB), 2006 U.S. Dist. LEXIS 46667, at *23 (S.D.N.Y. July 10, 2006), *In re Scholastic Corp. Sec. Litig.,* 252 F.3d 63, 72 (2d Cir. 2001), and *In re Rockefeller Ctr. Props. Sec. Litig*., 311 F.3d 198, 216 (3d Cir. 2002)—provide no support for the same reason.  (Pl. Br. at 17, 20.)  In each case, plaintiffs alleged facts showing that the company had, in fact, been adversely impacted by the market phenomena.  Likewise, plaintiffs do not identify any facts relating to the magnitude of RHI's "significant declines" in revenue or licensing fees resulting from changing technologies— the very defect the *Garber* court emphasized in dismissing the Section 11 claim in that case.  *See* 347 Fed. Appx. at 669-70.

17.)  What the registration statement actually says, after detailing the projected increase in the number of cable satellite television viewers and international growth, is this:  "As the number of other outlets for television product multiplies, demand for television content is expected to expand, and content companies such as RHI are expected to benefit."  (Pl. Ex. B at 78.)  Here again, plaintiffs offer no facts to suggest that this projection was wrong (*i.e.*, that outlets for television programming, such as new cable stations, were not increasing).[7]  Plaintiffs' theory that technological changes supports a Section 11 claim should be rejected.[8]

## II.   THE AMENDED COMPLAINT DOES NOT STATE A SECTION 15 CLAIM

Defendants' opening brief establishes that, because plaintiffs' Section 11 claim must be dismissed, their Section 15 claims also must be dismissed.  (Def. Br. at 14.)  Plaintiffs do not dispute this black-letter law.  The Section 15 claims should therefore be dismissed.

## III.   DISMISSAL SHOULD BE WITHOUT LEAVE TO AMEND

Plaintiffs "have no right to amend their pleadings a second time."  *In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 214, 233 (S.D.N.Y. 2004).  Plaintiffs certainly have no right to re-plead again, where, as here, they make only a perfunctory request in a footnote (Pl. Br. at 21 n.15) unaccompanied by any indication of how they would cure their pleading defects.

---

[7]    In any event, the statement that RHI "expected to benefit" from growing demand for television content generally is a statement of opinion which, as discussed above, can only be false if facts establish that it was both subjectively and objectively false when made.  Plaintiffs plead no such facts.  It is also protected under the bespeaks caution doctrine.

[8]    Plaintiffs' reliance on Item 503(c) of Regulation S-K (Pl. Br. at 15) is inapposite.  They cite no cases using Item 503(c) as the basis of a Section 11 claim and, in any event, plaintiffs have not established that RHI's disclosures were misleading in any way.  *See Lin v. Interactive Brokers Group, Inc.*, 574 F. Supp. 2d 408, 419-20 (S.D.N.Y. 2008) (no violation of Section 11 or Item 503(c) where offering documents put investor on notice of alleged risks).  Plaintiffs' assertion that RHI violated Item 303(a) by failing to disclose the trends associated with new media (Pl. Br. at 16) are similarly misplaced.  They were plainly disclosed.  (*See* Def. Ex. A, at 20.)

*See, e.g., id.*; *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004) (dismissing claims without leave to amend, noting that "plaintiffs have already been permitted to file one amended pleading through the filing of this Consolidated Amended Class Action Complaint" and have not submitted "any proposed amended pleading or indicated what they might allege to cure the deficiency identified in the motion to dismiss"); *In re Merrill Lynch Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 392 (S.D.N.Y. 2003) (denying leave to amend where plaintiffs "merely indicated in their opposition brief that they could amend their complaints").  Dismissal should be without leave to amend.

## Conclusion

For the foregoing reasons, defendants respectfully request that the Court dismiss the Amended Complaint without leave to amend.

Respectfully,

Dated:  New York, New York
         August 2, 2010

LATHAM & WATKINS LLP

By:   /s/  Jeff G. Hammel
         James E. Brandt
         Jeff G. Hammel

885 Third Avenue
New York, New York 10022
(212) 906-1200

Attorneys for Defendants

16