UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAROLD KLEIMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>RHI ENTERTAINMENT, INC., et al.,<br><br>Defendants. | Civil Action No. 1:09-cv-08634-AKH<br><br><u>CLASS ACTION</u><br><br>LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS |

# TABLE OF CONTENTS


Page

I. PRELIMINARY STATEMENT ..... 1

II. HISTORY AND BACKGROUND OF THE ACTION ..... 3

III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ..... 3

A. The Law Favors and Encourages Settlements ..... 3

B. The Settlement Is Procedurally Fair ..... 4

C. The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements ..... 5

D. The Settlement Satisfies the Second Circuit Criteria for Approval ..... 6

1. The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement ..... 6

2. The Reaction of the Class to the Settlement ..... 7

3. The Stage of the Proceedings and Discovery Completed ..... 8

4. The Risk of Establishing Liability ..... 10

5. The Considerable Risk of Establishing Damages ..... 12

6. The Risks of Maintaining the Class Action Through Trial ..... 14

7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation ..... 14

8. The Ability of the Defendants to Withstand a Greater Judgment ..... 16

IV. THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT ..... 16

V. THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED ..... 18

A. Numerosity, Commonality, and Typicality ..... 18

B. Adequacy of Representation ..... 19

C. Predominance of Common Issues and Superiority ..... 20

**Page**

VI. CONCLUSION ....................................................................................................21



655164_1

## TABLE OF AUTHORITIES

Page

### CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*,
269 F.R.D. 252 (S.D.N.Y. 2010) ........ 18

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ........ 14, 18, 19, 20

*Beecher v. Able*,
575 F.2d 1010 (2d Cir. 1978) ........ 17

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
No. 07 Civ. 2207(JGK), 2010 WL 3119374
(S.D.N.Y. Aug. 6, 2010) ........ 3, 6, 10, 14

*Carpe v. Aquila, Inc.*,
No. 02-0388-CV-W-FJG, 2005 WL 1138833
(W.D. Mo. Mar. 23, 2005) ........ 13

*Cross v. 21st Century Holding Co.*,
No. 00 Civ. 4333 (MBM), 2004 WL 307306
(S.D.N.Y. Feb. 18, 2004) ........ 18

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ........ 5, 9

*Darquea v. Jarden Corp.*,
No. 06 Civ. 722 (CLB), 2008 WL 622811
(S.D.N.Y. Mar. 6, 2008) ........ 21

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........ 4, 6, 10, 16

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ........ 17

*Hicks v. Stanley*,
No. 01 Civ. 10071 (RJH), 2005 WL 2757792
(S.D.N.Y. Oct. 24, 2005) ........ 7

*In re "Agent Orange" Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987) ........ 14

**Page**

*In re Alloy, Inc. Sec. Litig.*,
No. 03 Civ. 1597 (WHP), 2004 WL 2750089
(S.D.N.Y. Dec. 2, 2004) .......... 4

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) .......... 10, 16

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
No. MDL 1500, 2006 WL 903236
(S.D.N.Y. Apr. 6, 2006) .......... 11, 15, 19

*In re Ashanti Goldfields Sec. Litig.*,
No. CV-00-717 (DGT), 2005 WL 3050284
(E.D.N.Y. Nov. 15, 2005) .......... 3

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom.*
*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .......... 8, 10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .......... 13

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240 (CM), 2007 WL 2230177
(S.D.N.Y. July 27, 2007) .......... 10

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......... 6, 8, 17

*In re Holocaust Victim Assets Litig.*,
413 F.3d 183 (2d Cir. 2001) .......... 17

*In re Host Am. Corp. Sec. Litig.*,
No. 05-CV-1250 (VLB), 2007 WL 3048865
(D. Conn. Oct. 18, 2007) .......... 19

*In re Indep. Energy Holdings PLC Sec. Litig.*,
No. 00 Civ. 6689(SAS), 2003 WL 22244676
(S.D.N.Y. Sept. 29, 2003) .......... 12, 14

*In re Initial Pub. Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) .......... 20

**Page**

*In re JP Morgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005) .......... 11

*In re Luxottica Group S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) .......... 4, 5, 7

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 WL 4526593
(S.D.N.Y. Dec. 20, 2007) .......... 6

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) .......... 3

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 46 (S.D.N.Y. 1993) .......... 10

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) .......... 14

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.),
*aff'd*, 117 F.3d 721 (2d Cir. 1997) .......... *passim*

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
No. 06 Civ. 5173(RPP), 2008 WL 1956267
(S.D.N.Y. May 1, 2008) .......... 7, 9

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) .......... 5

*In re Time Warner Inc. Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993) .......... 11

*In re Veeco Instruments, Inc., Sec. Litig.*,
235 F.R.D. 220 (S.D.N.Y. 2006) .......... 19

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 0165(CM), 2007 WL 4115809
(S.D.N.Y. Nov. 7, 2007) .......... *passim*

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom.*
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) .......... 16

**Page**

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985),
*aff'd*, 798 F.2d 35 (2d Cir. 1986) ..... 13

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..... 16

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000) ..... 3

*Katz v. Image Innovations Holdings, Inc.*,
No. 06 Civ. 3707 (JGK), 2010 WL 2926196
(S.D.N.Y. July 22, 2010) ..... 20

*Kaufman v. Motorola, Inc.*,
No. 95 C 1069, 2000 WL 1506892
(N.D. Ill. Sept. 21, 2000) ..... 13

*Lewis v. Newman*,
59 F.R.D. 525 (S.D.N.Y. 1973) ..... 10

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..... 10, 15, 16, 18

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984) ..... 6

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ..... 4, 14, 15

*Plummer v. Chem. Bank*,
668 F.2d 654 (2d Cir. 1982) ..... 9

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..... 6, 7

*Taft v. Ackermans*,
No. 02 Civ. 7951(PKL), 2007 WL 414493
(S.D.N.Y. Jan. 31, 2007) ..... 3

*TSC Indus. v. Northway, Inc.*,
426 U.S. 438 (1976) ..... 11

**Page**

*U.S. v. City of New York*,
258 F.R.D. 47 (E.D.N.Y. 2009) ........ 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ........ 3, 15

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982) ........ 3, 4

*Wright v. Stern*,
553 F. Supp. 2d 337 (S.D.N.Y. 2008) ........ 3

*Zerkle v. Cleveland-Cliffs Iron Co.*,
52 F.R.D. 151 (S.D.N.Y. 1971) ........ 10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77k(a) ........ 12
§77k(e) ........ 12
§77z-1(a)(3)(B)(i) ........ 19

Federal Rules of Civil Procedure
Rule 23 ........ 14, 18
Rule 23(a) ........ 2, 18, 21
Rule 23(a)(1) ........ 18
Rule 23(a)(2) ........ 18
Rule 23(a)(3) ........ 18
Rule 23(a)(4) ........ 19
Rule 23(b)(3) ........ 2, 18, 20, 21
Rule 23(e) ........ 1, 3

**SECONDARY AUTHORITIES**

4 Alba Conte, Herbert B. Newberg,
*Newberg on Class Actions* (4th ed. 2002)
§11.45 ........ 8

**Page**

Brian Saxton, Svetlana Starkyh, *Recent Trends in Shareholder Class Actions: Filings Return to 2005 Levels as Subprime Cases Take Off; Average Settlements Hit New High* (NERA 2007) .......... 15

Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements, 2010 Review and Analysis* (Cornerstone Research 2011) .......... 15

Pursuant to Rules 23(b)(3) and (e) of the Federal Rules of Civil Procedure, Lead Plaintiff United Food & Commercial Workers Union Local 655, by and through its counsel ("Lead Counsel"), respectfully moves this Court for an order approving the proposed settlement (the "Settlement") of the above-captioned class action (the "Action"), certifying the Class for settlement purposes, and approving the proposed plan for allocating the Settlement proceeds to the Class (the "Plan of Allocation").[1]

## I. PRELIMINARY STATEMENT

Under the terms of the proposed Settlement, as set forth in the Stipulation, Two Million Five Hundred Thousand Dollars ($2,500,000) in cash (the "Settlement Amount") was paid into an interest-bearing escrow account on behalf of the Class in exchange for the dismissal of all claims brought against the Defendants in the Action and a full release of claims. The Settlement Fund (the Settlement Amount plus all interest earned thereon) will be used for the payment of taxes, notice and administrative costs, and for Court-awarded attorneys' fees and expenses. The cash remainder after these expenditures, the "Net Settlement Fund," will be distributed to Class Members who are not otherwise excluded from the Class and who timely submit valid Proof of Claim and Release forms to the Claims Administrator ("Authorized Claimants"). Each Authorized Claimant shall be allocated a percentage of the Net Settlement Fund based upon the relationship that each Authorized Claimant's claim bears to the total of all Authorized Claimants' claims, as explained in the Notice of: (1) Pendency and Proposed Settlement of Class Action, and (2) Hearing on Proposed Settlement (the "Notice").

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated as of March 8, 2011 (the "Stipulation").

Lead Counsel respectfully submits that this Settlement is an excellent recovery for the Class in light of the specific circumstances of the Action, and given the serious obstacles to recovery. This Settlement was reached by Lead Counsel, with the support of the Lead Plaintiff, as a result of their creative litigation efforts, and with the assistance of an experienced mediator. When viewed in light of the risks that Defendants could prevail on their pending motion to dismiss, or a motion for summary judgment or at trial, based on their defenses to falsity and materiality, and given the fact that RHI Entertainment, Inc. ("RHI" or the "Company") sought bankruptcy protection following the filing of the litigation, the Settlement is a substantial result for the Class. The Settlement also saves the Class the considerable expense and delay posed by continued litigation, and preserves insurance proceeds which are the only reliable source of recovery. As fully discussed below and in the accompanying Declaration of David A. Rosenfeld in Support of Lead Plaintiff's Motion for (1) Final Approval of Settlement and Plan of Allocation of Settlement Proceeds, and (2) an Award of Attorneys' Fees and Expenses (the "Rosenfeld Decl."), the significant risks involved in taking this case further in litigation, and possibly on to trial, when measured against the benefit of the Settlement, support the Court's final approval of the Settlement.

Lead Counsel has assessed the strengths and weaknesses of the claims and defenses asserted, and the considerable risks and delays associated with continued litigation and trial. Based on their assessment, Lead Plaintiff and Lead Counsel believe that the Settlement is eminently fair, reasonable, and adequate and provides a substantial result for the Class. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of this Settlement. In addition, the proposed Class meets all of the elements of Federal Rule of Civil Procedure 23(a) and (b)(3); therefore, the Court should grant final certification of the Class. Finally, the Plan of Allocation, which was developed with the assistance of Lead Plaintiff's damages consultant, is a fair and reasonable method

for distributing the Net Settlement Fund to Class Members, and should also be approved by the Court.

## II. HISTORY AND BACKGROUND OF THE ACTION

The Court is respectfully referred to the accompanying Rosenfeld Declaration for a full discussion of, *inter alia*, the factual background and procedural history of the Action, the litigation efforts of Lead Plaintiff and Lead Counsel, the significant risks of continued litigation, and a discussion of the negotiations leading to the Settlement.

## III. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A. The Law Favors and Encourages Settlements

Rule 23(e) requires that the settlement of a class action be approved by the court. A court may approve a settlement that is binding on the class only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207(JGK), 2010 WL 3119374, at *2 (S.D.N.Y. Aug. 6, 2010). This evaluation requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 165 (S.D.N.Y. 2007). While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions. *Wright*, 553 F. Supp. 2d at 344; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165(CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007); *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 WL 3050284, at *1 (E.D.N.Y. Nov. 15, 2005); *Taft v. Ackermans*, No. 02 Civ. 7951(PKL), 2007 WL 414493, at *4 (S.D.N.Y. Jan. 31, 2007). *See also Weinberger v. Kendrick*,

698 F.2d 61, 73 (2d Cir. 1982) (The settlement of complex class action litigations are clearly favored by the courts.). Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *Veeco*, 2007 WL 4115809, at *5. As stated by the court in *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972),

> the role of a court in passing upon the propriety of the settlement of a derivative or other class action is a delicate one. . . . [W]e recognized that since "'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation', the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial'."

*Id.* at 691-92 (citation omitted).

**B. The Settlement Is Procedurally Fair**

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Luxottica Group*, 233 F.R.D. at 315; *see also In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *1-*2 (S.D.N.Y. Dec. 2, 2004). A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations

and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations, with the assistance of Jed D. Melnick of JAMS serving as mediator. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (the use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion"). In addition, no question exists that Lead Counsel, equipped with knowledge from an extensive investigation and evaluation of Lead Plaintiff's claims, was fully informed of the merits and weaknesses of the case by the time the Settlement was consummated. Thus, little doubt exists that the Settlement is entitled to the presumption of procedural fairness dictated by Second Circuit law.

### C. The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements

As stated above, courts within the Second Circuit observe the universal standard for determining whether a proposed class settlement is substantively fair: whether the proposed settlement is "'fair, reasonable, and adequate.'" *Luxottica Group*, 233 F.R.D. at 310 (citation omitted). The Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of

> reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted). All nine factors need not be satisfied. Instead, the court should look at the totality of these factors in light of the specific circumstances involved. *Bellifemine*, 2010 WL 3119374, at *2; *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593, at *9-*10 (S.D.N.Y. Dec. 20, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

As demonstrated below, the Settlement satisfies each of the relevant criteria set forth above. Indeed, the Settlement represents an excellent recovery for the Class under the circumstances and, in the judgment of Lead Counsel, there is serious doubt that a more favorable result was possible following further litigation. As such, the Settlement clearly warrants this Court's final approval.

### D. The Settlement Satisfies the Second Circuit Criteria for Approval

#### 1. The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'[I]t is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.'") (citation omitted). Here, the securities claims advanced by Lead Plaintiff involve numerous complex legal and factual issues relating to, among other things, the television and film production industry, which would require extensive discovery, including voluminous document review and many depositions, as well as extensive expert discovery and testimony. The legal issues in this Action are equally complex – proving falsity, materiality, and damages – and would require expert testimony from both sides.

There can be no doubt that because this Action is settling against the Defendants at this time, the litigants have been spared the delay and expense of continued litigation, and valuable insurance policy proceeds have been preserved. Many hours of the Court's time and resources have also been spared. This Action has already been pending for two years. Even if the Class could recover a larger judgment after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing its value. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) ("*Sony*"); *Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."). Moreover, given the Defendants' financial condition and the limited sources of recovery, whether a judgment could even be satisfied is uncertain at best.

The $2.5 million Settlement at this juncture results in an immediate and substantial tangible recovery without the considerable risk, expense, and delay of trial. Lead Counsel submits that the Court should find that this factor weighs heavily in favor of the proposed Settlement.

### 2. The Reaction of the Class to the Settlement

The reaction of the class to the settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also Luxottica Group*, 233

F.R.D. at 311-12. One court has noted that the reaction of the class to a settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *Veeco*, 2007 WL 4115809, at *7 (citation omitted). Here, Lead Plaintiff has participated throughout the prosecution of the litigation, and was involved in the decision to enter into the Settlement with Defendants. Notice regarding the Settlement has been mailed to over 7,000 potential Class Members, and has been otherwise widely distributed. In response, not a single objection, to date, has been received. This is significant, as the Class contains numerous large shareholders with the incentive to object if they thought it was necessary to do so. In addition, not one recipient of the Notice, to date, has requested to be excluded from the Class.[2]

### 3. The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . . At minimum, the court must possess sufficient information to raise its decision above mere conjecture." 4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127, 128 (4th ed. 2002). As previously noted, "[f]ormal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *Global Crossing*, 225 F.R.D. at 458. *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (not necessary for court to find parties engaged in extensive discovery; must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (citing

---

2 The deadline to object to the Settlement or request exclusion from the Class expires on October 11, 2011. If any objections or exclusions are timely received, they will be addressed by Lead Counsel in a reply brief to be filed with the Court prior to the final approval hearing.

*Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Veeco*, 2007 WL 4115809, at *7 ("the parties need not have engaged in full discovery for a settlement to be approved as fair"); *Sony*, 2008 WL 1956267, at *7 (same).[3]

Here, Lead Counsel negotiated this Settlement only after conducting an extensive factual investigation and analysis relating to the events and transactions alleged in the Amended Consolidated Class Action Complaint for Violations of Federal Securities Laws (the "Amended Complaint"). Despite the PSLRA-mandated discovery stay that was in place throughout the litigation, Lead Counsel had a great deal of information available to them when the Settlement was reached. Specifically, Lead Counsel reviewed scores of publicly available documents, including regulatory filings, financial statements, press releases, and media reports about RHI. Lead Counsel also thoroughly researched the applicable law with respect to Lead Plaintiff's claims and the Defendants' potential defenses, and consulted with an economist who provided advice and assistance on issues relating to damages, negative causation, and materiality. Defendants' motion to dismiss was fully briefed at the time the mediation was scheduled. Moreover, in advance of the mediation, Lead Counsel prepared a detailed mediation statement, and following hard-fought settlement negotiations, reached an agreement-in-principle to settle the Action. Thereafter, Lead Counsel, as a term of the Settlement, conducted a telephonic interview of RHI's Chief Operating Officer concerning RHI's film production process, the basis for the Company's forecast contained in the initial public offering, and the reasons for the forecast revision and ultimate shortfall. Rosenfeld

---

3 In fact, in cases such as this one brought under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), no formal discovery may proceed until the motion to dismiss is denied.

Decl., ¶32. Thus, Lead Counsel had a clear picture of the strengths and weaknesses of this case and of the legal and factual defenses that Defendants would likely raise at trial. *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *6 (S.D.N.Y. July 27, 2007); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). As such, Lead Counsel had sufficient information to intelligently negotiate the terms of the Settlement that is before the Court for approval. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). Therefore, this Court should find that this factor also supports the Settlement.

**4. The Risk of Establishing Liability**

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Bellifemine*, 2010 WL 3119374, at *4; *Veeco*, 2007 WL 4115809, at *8; *Austrian & German Bank*, 80 F. Supp. 2d at 177. While Lead Plaintiff believes that its claims would survive Defendants' pending motion to dismiss as well as the anticipated motion for summary judgment that would follow expensive fact and expert discovery, it is also clear that ultimate success is not assured, and this Settlement, when viewed in light of the risks of proving liability, is undoubtedly fair, adequate, and reasonable. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973)); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971) ("Stockholder litigation is notably difficult and unpredictable.").

Lead Plaintiff faced numerous hurdles to establishing liability. This Action involves claims for relief under the Securities Act of 1933 (the "Securities Act"). To prevail on its claims, Lead Plaintiff must demonstrate that Defendants made misstatements or omissions of material fact in the

Registration Statement for RHI's initial public offering. *See In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005). Based on the defenses that Defendants have raised, Lead Counsel recognize that establishing liability at trial was not guaranteed. *See In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("[t]he difficulty of establishing liability is a common risk of securities litigation").

Lead Plaintiff faced significant risks in proving that the alleged misstatements were materially false or misleading. *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 264 (2d Cir. 1993) (to prove materiality, plaintiffs have the burden of demonstrating defendants' misrepresentations and omissions were materially false or misleading when made); *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Defendants have argued, among other things, that Lead Plaintiff alleged no facts even suggesting that the Company knew or had reason to know that its projection of "approximately 40" movies was untrue in June 2008, and in fact, was not untrue, because 35 movies were made – well within the range contemplated by "approximately 40." Defendants have also maintained that even if the projection of "approximately 40" movies was inaccurate when made, no reasonable investor could have been misled by it.

In response to Lead Plaintiff's claim that RHI failed to disclose the decline in demand it faced because of the proliferation of new digital media platforms, Defendants countered that Lead Plaintiff had not provided any facts showing that the new technology actually had an impact on RHI, or to what extent, or any evidence that RHI did not take these technologies into account when preparing the projections contained in the Registration Statement.[4]

---

[4] In their motion to dismiss, Defendants identified five "risk factors" contained in the Registration Statement which they believed adequately addressed the risks associated with new technologies.

By the time the parties agreed to the proposed Settlement, Lead Counsel had come to the conclusion that the defenses raised by Defendants could have certain jury appeal, and would render the inherently difficult burden of proving all of the elements of Lead Plaintiff's claims as to all of the Defendants even more difficult.

### 5. The Considerable Risk of Establishing Damages

Even if it successfully established liability, Lead Plaintiff also faced substantial risk in proving the existence and the amount of damages. *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving damages in securities cases). Damages under Securities Act claims are statutorily set: damages represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (i) the value thereof as of the time such suit was brought, or (ii) the price at which such security shall have been disposed of in the market before suit, or (iii) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages as calculated in subsection (i). *See* 15 U.S.C. §77k(a). Lead Counsel, with the assistance of its economic consultant, calculated the damages suffered by the Class attributable to the alleged misstatements and omissions. This figure assumes that every element of the Class's damages theory is accepted by a jury as being correct and recoverable. As such, its viability as an actual calculation for damages could be affected by many factors that arise in the Action, such as Defendants' ability to establish "negative causation" under §11(e) of the Securities Act. If a defendant can prove that the decline in the value of the security in question was not caused by the material omissions or misstatements in the registration statement, such portion of the damages shall not be recoverable. *See* 15 U.S.C. §77k(e).

The presentation of damages is a complex matter which would require the presentation of expert testimony. As a result, Lead Counsel already knows that the Class will ultimately face a "battle of experts" – a battle in which no party is ever assured to prevail, and a battle which would undoubtedly arise at the class certification stage. While Lead Counsel believes that reliable and convincing expert testimony can be provided on the damages question, and that a judgment could ultimately be obtained for the full amount of damages available under the law, meaningful obstacles remain. First, the Court must determine that Lead Plaintiff's damages model is admissible – and only then may a jury determine whether Lead Plaintiff's or Defendants' model is more accurate. The Class is by no means assured of a ruling in its favor. *See, e.g.*, *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG, 2005 WL 1138833 (W.D. Mo. Mar. 23, 2005) (granting defendants' motion to exclude plaintiffs' expert testimony); *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 WL 1506892, at *2 (N.D. Ill. Sept. 21, 2000) (precluding in part plaintiffs' expert testimony). It is then possible that, in the unavoidable "battle of experts," a jury might disagree with the Class's expert, or merely find Defendants' expert more persuasive.[5] As a result of the aforementioned considerations, the likelihood of proving damages, even assuming the Class prevailed on the liability issue, is somewhat difficult. *See Veeco*, 2007 WL 4115809, at *9. As a result, this factor also weighs in favor of the Settlement.

---

[5] *See, e.g.*, *PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of damages experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*, 798 F.2d 35 (2d Cir. 1986). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

### 6. The Risks of Maintaining the Class Action Through Trial

As discussed in Section V below, Lead Plaintiff believes that this Action meets all of the requirements for class certification under Rule 23. Had the Settlement not been reached, however, there would be no assurance of maintaining class status, since a court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. *Bellifemine*, 2010 WL 3119374, at *4; *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476-77 (S.D.N.Y. 1998). Absent settlement, Defendants would continue to oppose class certification and they would likely thereafter seek to have the Class decertified if their defenses were initially unsuccessful. Particularly, Defendants could potentially argue that a trial in this Action, if tried as a class action, would present "intractable management problems," a possibility which is wholly avoided by the Settlement. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). The Settlement avoids any uncertainty with respect to these issues.

### 7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 WL 4115809, at *11. The court need only determine whether the settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted); *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement."). *See also Indep. Energy*, 2003 WL 22244676, at *4 (noting few cases tried before jury result in full amount of damages claimed). The

Second Circuit has described the "'range of reasonableness'" as "'a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation.'" *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman*, 464 F.2d at 693). Nevertheless, this Settlement, which represents approximately 2.2 percent of Lead Plaintiff's most aggressive estimate of maximum provable damages, is consistent with the average recovery in shareholder litigation. *See* Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements, 2010 Review and Analysis*, at 5 (Cornerstone Research 2011) (settlements as a percentage of "estimated damages" averaged 2.8% in 2010); Stephanie Plancich, Ph.D., Brian Saxton, Svetlana Starkyh, *Recent Trends in Shareholder Class Actions: Filings Return to 2005 Levels as Subprime Cases Take Off; Average Settlements Hit New High*, at 14 (NERA 2007) (median ratio of settlements to investor losses in 2007 was 2.4%).[6]

Finally, in analyzing the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road, without any further risk to the Class. *See AOL Time Warner*, 2006 WL 903236, at *13 (where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). In light of the complex legal and factual issues typically present in securities class actions, the unpredictability of a lengthy and complex trial and the appellate process that would most likely follow, the fairness of a substantial settlement is clearly apparent. *Maley*, 186 F. Supp. 2d at 366.

---

6 Not surprisingly, Defendants calculated damages, if any, at significantly less than Lead Plaintiff.

### 8. The Ability of the Defendants to Withstand a Greater Judgment

The court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement. *Grinnell*, 495 F.2d at 463. RHI likely could not have paid any more money to the Class to resolve this litigation, given the fact that it was in poor financial condition, and the directors' and officers' liability insurance policy was the only viable source of recovery, and it was wasting with each day that the litigation continued. Moreover, given the indemnification agreements the Individual Defendants had with RHI, it was virtually certain that they would not ever be compelled to contribute to any settlement.

Accordingly, Lead Plaintiff and Lead Counsel respectfully submit that this Court should find that the *Grinnell* factors, taken together, weigh in favor of the Settlement and that the Settlement warrants final approval by the Court.

## IV. THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate.'" *Maley*, 186 F. Supp. 2d at 367 (citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005). "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003) (citation omitted), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005). A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *Am. Bank Note Holographics*, 127 F. Supp. 2d at 429-30 (citation omitted); *see also WorldCom*, 388 F. Supp. 2d at 344 (same). Further, courts enjoy "broad supervisory powers over

the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

The Plan of Allocation, which was fully described in the Notice, has a rational basis and was formulated by Lead Counsel, in consultation with Lead Plaintiff's damages consultant, ensuring its fairness and reliability. *See Veeco*, 2007 WL 4115809, at *13. The Plan of Allocation reflects the requirements for establishing damages promulgated by *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), and complies with the requirements of the PSLRA. Under the proposed Plan of Allocation, each Authorized Claimant (as defined in §I. of the Stipulation) will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, the settlement consideration less taxes, approved costs, fees, and expenses), with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.

The Plan of Allocation takes into account when Class Members purchased or acquired their RHI common stock and when and whether Class Members sold such securities. Accordingly, some shareholders may benefit more from the Settlement than others depending upon when they made their transactions. This is fair and reasonable, as there is no rule that a settlement benefit all class members equally. *Veeco*, 2007 WL 4115809, at *13; *Global Crossing*, 225 F.R.D. at 462. Indeed, it is appropriate for interclass allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue. *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001). Otherwise, certain class members may receive an inequitable windfall, to the detriment of others. *PaineWebber*, 171 F.R.D. at 133.

Lead Counsel believes that the Plan of Allocation is fair and reasonable, and respectfully submits that it should be approved by the Court. It should be noted that, to date, not one objection to

the Plan of Allocation has been filed, which also supports approval by the Court. *See Veeco*, 2007 WL 4115809, at *14; *Maley*, 186 F. Supp. 2d at 367.

## V. THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED

The parties have stipulated to certification of the Class for settlement purposes, and Lead Plaintiff's motion for preliminary approval of the Settlement contained an extensive discussion on the appropriateness of certifying the proposed Class.[7] That portion of Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Settlement (§III. thereof) is respectfully incorporated herein. The ultimate decision regarding certification rests with the Court, and courts have recognized that Rule 23's requirements are to be liberally construed. *Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, 269 F.R.D. 252, 254 (S.D.N.Y. 2010). Because all the requirements for class certification have been met, *see* Federal Rule of Civil Procedure 23(a) and (b)(3), and in light of the substantial benefits the Settlement confers on the Class, Lead Plaintiff respectfully requests that the Court now grant this Action final class certification.

### A. Numerosity, Commonality, and Typicality

The Class meets the numerosity, commonality, and typicality standards of Rule 23(a)(1)-(3). RHI issued over 13.5 million shares in the June 2008 initial public offering, with such shares actively traded on the NASDAQ National Market, an open and efficient market. As such, there are hundreds or thousands of members of the proposed Class, thus more than satisfying the numerosity requirement. *See Cross v. 21st Century Holding Co.*, No. 00 Civ. 4333 (MBM), 2004 WL 307306, at *1 (S.D.N.Y. Feb. 18, 2004) ("[c]ommon sense dictates" that class members in securities cases

---

7 The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of a class action. The Supreme Court has expressly approved the use of this device. *Amchem*, 521 U.S. 591.

exceed 100). Moreover, there are substantial questions of law and fact common to all Class Members (*e.g.*, whether Defendants violated the federal securities laws and whether members of the Class sustained damages as a result of the misrepresentations and/or omissions, and the extent of those damages).

In *Amchem*, 521 U.S. at 625, the Supreme Court noted that the common issues test is readily met in securities cases. *See also In re Veeco Instruments, Inc., Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) ("The commonality requirement has been applied permissively in the context of securities fraud litigation."). Further, Lead Plaintiff's claims are "typical" of other Class Members' claims because they purchased or acquired RHI common stock in the Company's initial public offering and thus have alleged damages similar to other Class Members. *See In re Host Am. Corp. Sec. Litig.*, No. 05-CV-1250 (VLB), 2007 WL 3048865, at *5 (D. Conn. Oct. 18, 2007) (finding typicality where plaintiffs alleged defendants committed same acts, in same manner against all class members).

**B. Adequacy of Representation**

The adequacy requirement of Rule 23(a)(4) requires Lead Plaintiff to demonstrate that (1) there is no conflict of interest between Lead Plaintiff and the other Class Members; and (2) Lead Counsel is qualified, experienced, and capable of conducting the Action. *AOL Time Warner*, 2006 WL 903236, at *5. The "touchstone of the adequacy inquiry is whether the interests of the proposed representative conflict with those of the members of the class as a whole." *U.S. v. City of New York*, 258 F.R.D. 47, 63 (E.D.N.Y. 2009). Here, this Court has already designated the proposed class representative as the lead plaintiff pursuant to the PSLRA, which provides that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C.

§77z-1(a)(3)(B)(i). Furthermore, Lead Plaintiff has retained highly competent counsel with extensive experience litigating complex securities class actions. *See* firm biography of counsel, submitted herewith. Thus, Lead Plaintiff and its counsel have diligently advanced the interests of the Class.

### C. Predominance of Common Issues and Superiority

Certification of a class under Rule 23(b)(3) requires that common issues predominate over individual issues and that the class action mechanism is superior to other methods of adjudicating the controversy. *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 92 (S.D.N.Y. 2009). In this Action, both of these requirements are satisfied. First, in order to satisfy this requirement, it must be shown that the issues subject to generalized proof predominate over the issues subject to only individualized proof. As the Supreme Court recognized in *Amchem*, the predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." 521 U.S. at 623. The Court further notes that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.* at 625. Here, the issues of liability and causation are common to all members of the Class and clearly predominate over any individual issues. Second, resolution of this Action through a class action is far superior to litigating thousands of individual claims where the expense for a single investor in pursuing a separate action would likely exceed the individual's loss in RHI common stock. *See Katz v. Image Innovations Holdings, Inc.*, No. 06 Civ. 3707 (JGK), 2010 WL 2926196, at *6 (S.D.N.Y. July 22, 2010) ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [because] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery

is often not feasible'") (citation omitted); *Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 WL 622811, at *2 (S.D.N.Y. Mar. 6, 2008).

In light of the foregoing, all of the requirements of Rule 23(a) and (b)(3) are satisfied, and thus, the Court should certify this Class for settlement purposes.

## VI. CONCLUSION

The Settlement reached in this Action is an excellent result under the circumstances present here. For the foregoing reasons, the $2.5 million all-cash Settlement and Plan of Allocation of the settlement proceeds are fair, reasonable, and adequate and should be granted the Court's final approval. Additionally, all the requirements for certification have been met, and Lead Counsel respectfully submits that the Court should certify the Class for settlement purposes.

DATED: October 4, 2011

Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
ELLEN GUSIKOFF STEWART

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 4, 2011.

s/ Ellen Gusikoff Stewart

ELLEN GUSIKOFF STEWART

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: elleng@rgrdlaw.com

# Mailing Information for a Case 1:09-cv-08634-AKH

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Erin Whitney Boardman**
  eboardman@csgrr.com
- **James Ellis Brandt**
  james.brandt@lw.com,jessica.bengels@lw.com,jason.grossman@lw.com
- **Jarrett Scott Charo**
  jcharo@rgrdlaw.com
- **Jack Gerald Fruchter**
  jfruchter@aftlaw.com
- **Jeff G. Hammel**
  jeff.hammel@lw.com,jessica.bengels@lw.com,jason.grossman@lw.com
- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com
- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)